UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| RICKY LEE STROBLE, § | | |
| Institutional ID No. 1594772, § | | |
| SID No. 3603541, § | | |
| Previous TDCJ No. 623411, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 1:12-CV-055-BL | |
| BRAD LIVINGSTON, § | ECF | |
| Executive Director, TDCJ, *et al.*, § | | |
| § | | |
| Defendants. § | Assigned to U.S. Magistrate Judge | |

# MEMORANDUM OPINION AND ORDER

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on April 9, 2012 (Doc. 1). He alleges that his rights under the United States Constitution were violated by staff members at the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") and by various TDCJ officials who deprived him of due process of law and freedom of speech. The Defendants in this case include Brad Livingston, Jennifer Smith, and Joni White.

This matter was reassigned to the United States Magistrate Judge on April 17, 2012 (Doc. 8). An evidentiary hearing was set and Plaintiff testified in his own behalf, in order to further develop the factual basis of his claims pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C. § 1915. Plaintiff consented to having the United States Magistrate Judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) on April 16, 2012 (Doc. 6).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

1. Plaintiff has been confined to the Robertson Unit during all times relevant to the claims in his complaint.

2. Plaintiff has had magazines and photographs sent to him through the mail.

3. Several of the magazines and photographs sent through the mail to Plaintiff have been confiscated.

4. Plaintiff appealed the confiscation by filing step 1 and step 2 grievances and also appealed directly to the Director's Review Committee ("DRC"). The DRC amended the decision and permitted Plaintiff to receive some of the images. On another occasion, images were rejected, and the DRC upheld the rejection.

5. Defendants Smith and White applied TDCJ Board Policy 03.91 ("BP 03.91"), which provides that mail may be rejected, to images that she considered altered, including photographs wherein the publisher had placed marks on the photographs of persons.

6. Plaintiff argues that the interpretation of the policy abrogated his rights.

Plaintiff is seeking declaratory and injunctive relief as well as an award of damages.

## II. ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma*

*pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing). In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist*., 233 F.3d 871, 874 (5th Cir. 2000).

The court has reviewed Plaintiff's arguments and claims in his complaint as supplemented by his testimony to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

**A.     Plaintiff's Due Process and First Amendment Claims**

Plaintiff alleges that his rights were violated when Defendants confiscated certain photographs or publications containing photographs as images proscribed by BP 03.91. which included images that were altered by the publisher.

-3-

Although prison inmates do not shed all of their constitutional protections by virtue of their confinement, such rights may be circumscribed to further legitimate penological objectives. Specifically, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, (1974). In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court established the applicable test for evaluating the constitutionality of regulations that infringe on a prisoner's First Amendment rights. The Court found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349. Even if a policy or regulation impinges on an inmate's constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests. *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir. 1992) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Thus, when reviewing a prison policy that restricts the flow of publications to prisoners, the appropriate question is whether that policy is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404, (1989). In *Thornburgh*, the Supreme Court noted that administrators are afforded substantial deference regarding policies that preserve internal order and security by controlling the types of materials that are allowed into a prison. *Id*. at 416.

> To determine whether a regulation is valid the Court considers (1) whether the regulation has a logical connection to the legitimate government interest invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Henthorn*, 955 F.2d at 353 (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). A court "must determine whether the government objective underlying the regulation at issue is legitimate

and neutral, and that the regulations are rationally related to that objective." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Thornburgh*, 490 U.S. at 414-15).

The protections afforded an inmate's mail are generally related to his constitutional right of access to the courts and to free speech and association. *See, e.g., Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988) (clearly marked legal mail may not be censored.). Prison officials may establish reasonable regulations, even with regard to legal mail, such as requiring an attorney to identify himself in writing to prison officials, before they must treat mail as legal mail. *Henthor*n, 955 F.2d at 353 (citing *Taylor v. Sterrett*, 532 F.2d 462, 475 n.20 (5th Cir. 1976)).

Thus, it is apparent that reasonable regulations regarding prisoner mail may be constitutional where such a policy is reasonably related to legitimate penological interests. *See Chriceol v. Phillips*, 169 F.3d 313, 316-17 (5th Cir. 1999) (noting that prison officials may establish reasonable regulations regarding prisoner mail, even where a prisoner claims that rights to free speech and association are implicated).

It has been found by the Fifth Circuit that prison officials may deny a prisoner access to mail which advocates racial, religious, or national hatred; illegal activities; or that advocate violence. *Id.* at 316. In *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978), the Court found that a prison policy excluding publications with explicit sexual content is permissible, so long as certain guidelines were followed. The *Guajardo* court indicated that

> [b]efore delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through the proper administrative channels.

*Id.* at 762. The Court further explained that in order to pass constitutional muster, such a policy must give prisoners notification of the refusal, a reasonable opportunity to challenge the initial decision,

and an ultimate decision by a disinterested party not privy to the initial censorship decision. *Id*. at 762 n.10.

Insofar as Plaintiff alleges that he was deprived of his property without due process of law, the court notes that deprivations of property by prison officials, even when intentional, do not violate the Due Process Clause so long as an adequate post-deprivation remedy exists. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson,* 468 U.S. at 534-35. Texas law allows for recovery of monetary damages for loss of property that has been improperly taken. *See, e.g., Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement).

Plaintiff also alleges that his First Amendment rights were violated when the Defendants refused him certain photographs. Plaintiff own allegations demonstrate that the photographs in question were reviewed, a finding that they were denied as sexually explicit was made, and Plaintiff was permitted to appeal. Indeed, Plaintiff prevailed in part before the DRC and gained access to certain images that had initially been denied. This procedure is consistent with *Guajardo*. TDCJ may limit access that prisoners have to sexually oriented materials, and the application of BP 03.91 has been upheld as consistent with an inmate's constitutional rights. *See Thompson v. Patteson*, 985 F.2d 202, 205 (5th Cir. 1993).

Plaintiff contends that application of this policy by Smith and White was incorrect or abrogated his constitutional rights because of the way they interpreted such policy to include images that had been digitally altered. The court has accepted Plaintiff's factual allegations. However, these allegations demonstrate that Smith and White used their judgment as prison officials in reviewing the items denied. Plaintiff was given a procedure for appealing, and availed himself of this process.

Plaintiff's allegations demonstrate that he was not deprived of any process that he was due and also fail to demonstrate that his rights to free expression were implicated by either BP 03.91 or its application by Smith and White. Plaintiff's due process and First Amendment claims thus lack an arguable basis in law or fact and should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

B.    **Supervisory Capacity Claims**

Plaintiff alleges that Defendant Livingston is liable for the actions of Smith and White under *respondeat superior*. Plaintiff does not allege that Livingston was personally involved in the denial of his mail or photographs.

In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in a constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their subordinates." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003). Supervisory officials may be held liable only if: "(i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.,* 977 F. 2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.,* 37 F. 2d 1146, 1150 (5th Cir. 1994).

As the court has noted, Plaintiff's allegations, accepted as true, fail to demonstrate either an unconstitutional policy, process, or action by Smith or White. Plaintiff's allegations also fail to demonstrate that an unconstitutional policy caused him harm. There is thus no basis for Plaintiff's

claims against Livingston based on his supervisory capacity. Lacking an arguable basis in law or fact, Plaintiff's supervisory capacity claims against Livingston should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### III. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that Plaintiff's claims against the Defendants for deprivation of his constitutional rights to due process and free expression, with regard to the denial of images under BP 03.91, asserted against them in their individual or supervisory capacities, lack and arguable basis in law or fact.

**IT IS, THEREFORE**, **ORDERED THAT** Plaintiff's claims against the Defendants in their individual, official, or supervisory capacities for deprivation of due process of law and of free expression are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Judgment shall be entered accordingly. This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915(g) and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

Any pending motions are denied.

A copy of this order shall be sent by first-class mail to all parties appearing *pro se.* Any attorney of record shall be notified electronically or by first-class mail.

**SO ORDERED**.

DATED this 31st day of January, 2013.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**